34932. ATLANTIC COAST LINE RAILROAD CO. v. POWERS.

NICHOLS, J. In a suit for the value of four cows, admitted to have been killed by the operation of the defendant railroad's train, the evidence showed: that the cows were first seen at about the same time and from the same distance by the defendant's engineer and by the plaintiff's brother, who was driving a truck along a highway parallel to the railroad, in the same direction as the train but at a slower speed; that the cows were not then on the tracks but were standing in safety, either on the left side of the tracks or on both sides; that, when the cows later began to move toward the tracks, the engineer made a heavy, service

application of the brakes of the train, checking its speed from 59 to 50 miles per hour, and also sounded the horn and rang the bell; and that some but not all of the cows got across the tracks. *Held:*

The evidence was insufficient to raise an issue as to the defendant's negligence. "A railroad company is not required to slow up or to check its trains when an animal is seen near the track in a place of safety, unless the animal is apparently approaching the track, or there is apparent danger that, through fright or otherwise, it will get on the track. Only when the engineer sees, or by the exercise of ordinary diligence could see, that an animal in proximity to the track is in danger of getting on it in front of the moving train is he charged with the duty of exercising all reasonable diligence to check the train and to avoid killing or injuring the animal." *Augusta Southern R. Co.* v. *Carroll,* 7 *Ga. App.* 138 (1) (66 S. E. 403). Also, see *Southern Ry. Co.* v. *Eubanks,* 117 *Ga.* 217, 221 (43 S. E. 487); *Atlantic Coast Line R. Co.* v. *Carver,* 81 *Ga. App.* 26 (57 S. E. 2d 692); *Powell* v. *Rogers,* 75 *Ga. App.* 165 (42 S. E. 2d 573); *Southern Ry. Co.* v. *Russell,* 46 *Ga. App.* 772 (169 S. E. 245); and compare *Atlantic Coast Line R. Co.* v. *Walker,* ante, p. 605. The verdict for the plaintiff was not authorized, and the court erred in denying the defendant's motion for a new trial.

*Judgment reversed. Felton, C. J., and Quillian, J., concur.*

DECIDED FEBRUARY 10, 1954.

*Bennett, Pedrick & Bennett,* for plaintiff in error.

*Eldon L. Bowen,* contra.

C. O. Powers sued Atlantic Coast Line Railroad Company for the value of four cows, admitted to have been killed by the operation of one of the defendant's trains. The defendant denied its alleged negligence.

On the trial, the plaintiff testified as to the value of the cows. His brother, Alfred Powers, testified that he was driving a truck and trailer south, from Blackshear to Waycross, along a highway parallel to and 50 yards away from the defendant's tracks. He was less than a quarter of a mile from where the cows were killed, and saw them on the railroad before the train struck the cows. There were some cows on both sides. When the train passed him, going in the same direction, he did not notice whether there were any cows on the tracks, but he saw the cows there a little before the train hit them. As the train got up close to them, he could see the cows beginning to move. The train was pretty close to the cows when he first saw them on the tracks. He would not say that the train did not slow down any, and he did not hear the whistle blow. His truck was making a lot of noise, and the train was then ahead of him.

The defendant's engineer testified that he was about 1,000 or 800 feet from the cows when he first saw them. His passenger train was traveling at 59 miles per hour. It was shortly after 9 a. m. on May 15, 1950, a cloudy morning with a little misty rain. When he first saw the cows, they were midway between the edge of the right-of-way and the pass track to the left. When he was about 500 feet from the cows, they made a move to go towards the tracks. He then applied brakes, sounded the horn, and turned on the bell-ringer, as he thought the cows intended to cross the tracks. He was 100 feet from them when they got on the tracks, and his speed was then reduced to 50 miles per hour. He had made a heavy, service application of the brakes before the cows got on the tracks; even an emergency application would not have been sufficient to stop the train from the time he first saw the cows move toward the tracks. He thought he could slow the train so the cows would have a chance to get across the tracks, and some of them did get across. It is dangerous to apply emergency brakes on a train carrying passengers, for persons riding in the rear cars may be hurt.

A trainman on a work train which was waiting on the pass track for the passenger train to go by testified that the work train had earlier gone by the cattle on the left side of the tracks. He could see the cattle about 1,500 or 1,600 feet to the rear of the work train. He saw the passenger train approach, and it could not have been very far from the cows when they moved toward the tracks. He could hear the horn blowing, but could not hear the bell ringing. The engineer slowed down when he saw the cows coming on the tracks.

Alfred Powers, recalled, testified that he did not see any special movement of the cattle coming from the other side of the railroad; he could not tell what the cows were doing. It seemed that there were some on both sides of the track. When the cows were killed he was about a quarter of a mile away from them. When he first saw the cows, they were around the tracks, and he could not tell where they were running from.

The jury returned a verdict for the plaintiff in the amount sued for, and the court denied the defendant's motion for a new trial. The defendant excepted.